UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTONIO M. HARRIS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, et al., <br><br> Defendants. | No. 20 CV 4521 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Antonio Harris was with some friends when he saw Chicago police officers Matthew Sanchez, Christian Szczur, and Danilo Loza roll up in their cars. Harris left the area. When the officers followed, he started running and tried to hop a fence. Officer Loza caught Harris at the fence and made physical contact, causing a fence spike to cut Harris's arm. Harris was arrested and charged with nine felony offenses; after nearly two years in pretrial detention, the prosecution dropped eight charges and Harris was acquitted of the other. Harris sued the officers and the City of Chicago, bringing several claims for violations of his federal constitutional rights under 42 U.S.C. § 1983, and claims for indemnification, malicious prosecution, and battery under Illinois law. Defendants move to strike or dismiss most of Harris's claims under Federal Rule of Civil Procedure 12. For the reasons that follow, the motion to strike is denied; the motion to dismiss is granted in part and denied in part.

I.   **Legal Standards**

A complaint must contain a short and plain statement that plausibly suggests a right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but it need not do the same for legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

The court also may—on its own or on motion—strike redundant or immaterial matter from the pleadings. Fed. R. Civ. P. 12(f).

II.  **Facts**

Antonio Harris was talking with some friends when he saw police vehicles approaching. [1-1] ¶ 4.[1] Harris left the location to avoid an encounter with the officers. *Id.* ¶¶ 5–6. Officers Sanchez, Szczur, and Loza pursued Harris, who ran and attempted to jump a fence. *Id.* ¶¶ 7–9. At the fence, Loza "made unauthorized physical contact" with Harris, causing his arm to catch on a fence spike, which severed a tendon. *Id.* ¶¶ 10–11.

Harris was then arrested without probable cause or lawful basis. *Id.* ¶¶ 12–13. After seeing the severity of Harris's injury, the defendant officers decided to charge

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the amended complaint, [1-1] at 7–16.

him with nine felony offenses—including unlawful possession of a weapon and being an armed habitual criminal—even though none of the officers ever saw Harris with a weapon. *Id.* ¶¶ 14–15. The officers filed false police reports to cover up their own misconduct, which led to Harris being detained without bond—on charges that lacked probable cause—from July 2018 until May 2020. *Id.* ¶¶ 16–17, 33. The prosecution dropped eight of the charges and Harris was found not guilty of the lone remaining charge. *Id.* ¶¶ 18–20.

Harris brings claims against: Loza under § 1983 for using excessive force in violation of his Fourth Amendment rights (Count I) and for battery under Illinois law (Count VII); the three defendant officers under § 1983 for false arrest (Count II), unlawful pretrial detention (Count III), and conspiracy to deprive constitutional rights (Count IV); the City for indemnification under 745 ILCS 10/9-102 (Count V); and all defendants for malicious prosecution under Illinois common law (Count VI). Defendants move to strike Count III under Federal Rule of Civil Procedure 12(f),[2] and to dismiss Counts I, IV, and VII under Rule 12(b)(6).

## III. Analysis

### A. Motion to Strike

While motions to strike are generally disfavored, a court may remove redundant matter from the pleadings. Fed. R. Civ. P. 12(f); *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (When "motions to

---

[2] Defendants' reply brief confusingly refers to Count II several times. *See* [21] at 1, 3. But I understand their motion to strike to be directed only at Count III. *See* [15] at 6.

strike remove unnecessary clutter from the case, they serve to expedite, not delay."). Defendants move to strike Harris's unlawful-detention claim because it "is essentially the same" as the false-arrest claim and there "is no legal or factual distinction between the two counts." [15] at 6.

But false arrest and unlawful detention protect distinct Fourth Amendment interests under § 1983. The former hinges on the absence of probable cause at the time of arrest. *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). The statute of limitations for a false-arrest claim "'begins to run at the time the claimant becomes detained pursuant to legal process,' meaning when the claimant is 'bound over for trial.'" *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) (quoting *Wallace v. Kato*, 549 U.S. 384, 391, 397 (2007)). An unlawful pretrial detention claim under § 1983, on the other hand, requires "the absence of probable cause that would justify the detention." *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 670 (7th Cir. 2018) (citing *Manuel v. City of Joliet, Illinois*, 137 S.Ct. 911, 917–20 (2017)). In other words, "[t]he problem is the wrongful custody," not whether an initial arrest was lawful. *Manuel*, 903 F.3d at 670. An unlawful detention claim, moreover, accrues when a claimant is released from custody. *Id.* at 669.

Plaintiff's unlawful-detention and false-arrest claims are not redundant, so the motion to strike Count III is denied.

**B.     Motion to Dismiss**

*1.     Excessive Force*

The Fourth Amendment's prohibition against unreasonable seizures bars police from using excessive force. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Force is excessive if, in light of the totality of the circumstances, it was greater than reasonably necessary to effectuate the seizure. *County of Los Angeles, Calif. v. Mendez*, 137 S.Ct. 1539, 1546 (2017); *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012). To assess whether the degree of force was justified, courts consider the severity of the crime for which the plaintiff was detained or arrested, whether he posed a threat to the safety of the officers or to others, and whether the plaintiff was resisting the officers or attempting to flee. *Howell v. Smith*, 853 F.3d 892, 898 (7th Cir. 2017). Courts view the facts from the perspective of a reasonable officer at the time of the seizure "'rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham*, 490 U.S. at 392, 396–97)).

The amended complaint asserts that when Harris tried to jump a fence, Loza "made unauthorized physical contact" with him, causing his "arm to catch on the spike of the fence" and "sever[ing] a tendon from Plaintiff's arm." [1-1] ¶¶ 9–11.

Harris has not plausibly alleged excessive force. All the amended complaint pleads is that Loza made some unauthorized contact with Harris at the fence, which caused a fence spike to injure Harris's arm. But mere contact during an unlawful arrest does not state a claim for excessive force. *Carlson v. Bukovic*, 621 F.3d 610, 622 n.19 (7th Cir. 2010) ("A seizure without probable cause is conceptually different from

5

a seizure that employs excessive force; both are unreasonable, but for different reasons."); *see also Haze v. Kubicek*, 880 F.3d 946, 950 (7th Cir. 2018) ("[I]t is well established that the lawfulness of a temporary detention and the lawfulness of an officer's use of force are separate questions subject to different legal tests."). Setting the lawfulness of the seizure aside, the facts in the amended complaint do not yield a reasonable inference that Loza used more force than reasonably necessary to arrest Harris.[3] In other words, although Loza made contact with Harris to effectuate an unlawful arrest, it is not plausibly alleged that he used an unreasonable amount of force while doing so.

Count I is dismissed without prejudice.

### 2. Conspiracy to Deprive Constitutional Rights

A § 1983 plaintiff may recover from a defendant who conspired to violate plaintiff's constitutional rights. To establish conspiracy liability under § 1983, a plaintiff must show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citing *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)). In other words, a plaintiff must "'show an underlying constitutional violation' and 'demonstrate that the defendants agreed

---

[3] A complaint "may not be amended by the briefs in opposition to a motion to dismiss." *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). Accordingly, I do not consider the new facts Harris provides in response to the motion to dismiss (that Loza "yanked" Harris's leg causing him to be "impaled on a fence"). [20] at 2–3.

to inflict the constitutional harm.'" *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (quoting *Hurt v. Wise*, 880 F.3d 831, 842 (7th Cir. 2018)).

Harris has identified an underlying constitutional violation: his pretrial detention without probable cause. After seeing the severity of his injury, Harris says, the officers attempted to cover up their own wrongdoing by falsifying police reports and baselessly charging him with nine felonies. [1-1] ¶¶ 14–16. Harris was charged with unlawful possession of a firearm, for example, even though none of the defendant officers ever saw him with a gun. As a result of the officers' false reports, Harris was denied bond and unlawfully detained for months pending trial. *Id.* ¶ 17.

Harris has also adequately pleaded that—to cover up their own wrongdoing—the defendant officers agreed to deprive him of his constitutional rights after his arrest. Harris argues that each defendant officer agreed and took overt steps (i.e. filing fabricated police reports) that caused him to be detained in violation of his constitutional rights. *Id.* ¶¶ 17, 37–39. This is enough to put the defendants on notice of plaintiff's theory of conspiratorial liability. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006) (notice pleading requires that a plaintiff "allege the parties, the general purpose, and the approximate date of the conspiracy").

Defendants argue, however, that they are entitled to qualified immunity from § 1983 conspiracy liability. Police officers are entitled to qualified immunity when a plaintiff fails to adequately allege facts that, if true, would constitute a violation of a clearly established statutory or constitutional right. *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The constitutional right not to be detained without probable cause is clearly established. *See Manuel v. City of Joliet, Illinois*, 137 S.Ct. 911 (2017). And the court of appeals has long recognized that conspiracy to violate constitutional rights provides a pathway to recovery under § 1983. *See Daugherty*, 906 F.3d at 612; *Geinosky v. City of Chicago*, 675 F.3d 743, 749–50 (7th Cir. 2012) (holding that a plaintiff's allegations of a conspiracy among police officers to harass him by issuing bogus parking tickets stated a claim under § 1983); *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) (upholding a jury verdict against individual police officers under § 1983 for voluntary participation in a conspiracy to deprive a plaintiff's constitutional rights).

Defendants argue that they are nevertheless entitled to qualified immunity based on the intra-corporate conspiracy doctrine. That doctrine applies to both corporations and government entities, and holds that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017); *see also Copperweld Corp v. Independence Tube Corp.,* 467 U.S. 752, 769–71 (1984). The doctrine does not deny that "officers are answerable for their own crimes and torts," but protects "managers of a corporation jointly pursuing its lawful business [who] do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990); *see also Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972) ("[A]n agent's action within the scope of his authority will [not] always

8

avoid a conspiracy finding. ... But if the challenged conduct is essentially a single act of discrimination by a single business entity, the fact that two or more agents participated in the decision ... will normally not constitute the conspiracy.").

Defendants acknowledge that the Seventh Circuit has never held that the intra-corporate conspiracy doctrine bars § 1983 claims against police officers who conspire to violate constitutional rights. [15] at 7; [21] at 6. But, they argue, lack of such a holding makes it unclear "whether police officers can form a conspiracy among themselves." [15] at 7. Defendants further claim that the Seventh Circuit's application of the doctrine to § 1985 suits, *see Travis*, 921 F.2d at 110, and other recent nonbinding decisions, render the law unsettled. *See Jackson v. City of Cleveland*, 925 F.3d 793, 819-20 (6th Cir. 2019); *Haliw v. City of South Elgin*, 2020 WL 1304697, at *4 (N.D. Ill., March 18, 2020).[4] This lack of clarity, defendants argue, is enough to require the court to dismiss Count IV based on qualified immunity. *Id.* at 7–8.

But whether the intra-corporate conspiracy doctrine applies to § 1983 cases or not, it does not apply to the facts alleged in the complaint. The doctrine applies only when the agents of a corporation or government entity act within the scope of their employment in joint pursuit of the entity's lawful business. *Travis*, 921 F.2d at 110; *Payton v. Rush-Presbyterian-St. Luke's Medical Center.*, 184 F.3d 623, 633 (7th Cir.

---

[4] Defendants also cite *Thomas v. City of Blue Island*, 178 F.Supp.3d 646, 654 (N.D. Ill. 2016), claiming that the case "extended the intracorporate conspiracy doctrine to Section 1983 claims." [15] at 7. That case in fact held that the doctrine did not apply to police officers who falsified police reports. *Id.*

9

1999) (holding that the doctrine applies "so long as all are working in the corporation's (or governmental entity) interest"). In cases of police misconduct, "the doctrine is inapplicable if the alleged misconduct is 'not the product of routine police department decision-making.'" *Thomas v. City of Blue Island*, 178 F.Supp.3d 646, 654 (N.D. Ill. 2016) (quoting *Salaita v. Kennedy*, 118 F.Supp.3d 1068, 1085 (N.D. Ill. 2015)). The amended complaint alleges that the defendant officers agreed to cover up their own wrongdoing by fabricating evidence to support baseless charges against Harris. Defendants do not claim that such conduct was routine or in the interests of the police department.

Recent uncertainty over the intra-corporate conspiracy doctrine's application to § 1983 cases does not create an opening for qualified immunity on behalf the defendant officers. The defendants' argument starts from a faulty premise (one invited by plaintiff's labels in the complaint): that conspiracy is a claim separate from the underlying constitutional violation. It's not. Like failure-to-intervene, a conspiracy among state actors is simply a means of proving that a defendant is legally responsible for the violation. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not an independent basis of liability in § 1983 actions."). A conspiracy "claim" against state actors "adds nothing to the case or to [plaintiff's] potential recovery." *Boothe v. Sherman*, 66 F.Supp.3d 1069, 1077–78 (N.D. Ill. 2014); *Jones*, 856 F.2d at 992 (clarifying that, in a § 1983 case, "the function of conspiracy doctrine is merely to yoke particular individuals to the specific [constitutional] torts charged in the complaint"); *see also Logan v. Wilkins*, 644 F.3d 577, 583 n.1 (7th Cir.

10

2011) (a § 1983 conspiracy "matters only" with respect to private-actor defendants because state actors are amenable to suit by virtue of their offices) (quoting *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)). In a § 1983 action, a police officer who agrees to violate the constitutional rights of a plaintiff is liable only if the underlying constitutional violation comes to fruition. This road to liability is well-paved—clearly established—in several cases. Resort to the intra-corporate conspiracy doctrine (derived from different statutory language in § 1985(3) that unlike § 1983 creates independent liability for conspiracy) is a distraction, and does not undermine the validity of the conspiratorial theory of liability under § 1983, through which an officer is liable for his own tort.

In 2018, an officer would know that agreeing to violate the Fourth Amendment rights of a suspect and causing an underlying Fourth Amendment violation could subject him to liability. The complaint adequately alleges that each defendant officer personally violated Harris's Fourth Amendment rights.

The motion to dismiss Count IV is denied.

    3.    *Battery*

Plaintiff agrees that the battery claim is time barred. [20] at 2. Count VII is dismissed with prejudice.

## IV. Conclusion

Defendants' motion to dismiss, [15], is granted in part, denied in part. Count I is dismissed without prejudice; Count VII is dismissed with prejudice. The motion to strike Count III, and the motion to dismiss Count IV, are denied. Plaintiff has leave

11

to file an amended complaint to cure Count I by December 23, 2020. If an amended complaint is not filed, the dismissal of Count I will convert to a dismissal with prejudice. Defendants shall file amended answers by January 13, 2021. A joint status report on the progress of discovery remains due December 18, 2020.

ENTER:

                                          Manish S. Shah
                                          United States District Judge

Date: December 2, 2020